IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**DENNIS MURPHY, as Personal Representative**
**of the ESTATE OF DANIEL TURNER, deceased,**
**and WALTER and TAMARA TURNER,**

    Plaintiffs,

v.                                                                   No. CIV 19-639

**THE CITY OF FARMINGTON, and**
**JAMES PRINCE, JAMES MOORE,**
**ZACK WOOD and JESSE GRIGGS,**
**In their individual capacities,**

    Defendants.

## COMPLAINT

Plaintiffs Dennis Murphy, as Personal Representative of the Estate of Daniel Turner, and Walter and Tamara Turner, through undersigned counsel, bring the following causes of action against Defendants pursuant to 42 U.S.C. § 1983 and the New Mexico Tort Claims Act ("TCA"), NMSA 1978, §§ 41-4-1 *et seq*. In support of these causes of action, the Plaintiffs allege the following:

### PARTIES, JURISDICTION AND VENUE

1. Dennis Murphy is the properly named party to bring claims on behalf of the Estate of Daniel Turner, as the Personal Representative of the Estate, having been appointed as such in *In Re: Appointment of Personal Representative to Pursue Wrongful Death Claim on Behalf of Daniel Turner*, No. D-101-CV-2019-01174, and resides in Santa Fe County, New Mexico.

2. Plaintiffs Walter and Tamara Turner are the natural parents of the decedent, Daniel Turner, and reside in San Juan County, New Mexico.

3. Defendant City of Farmington ("City") is a political subdivision of the State of New Mexico and a governmental entity and local public body as those terms are defined in the TCA, NMSA 1978 §§ 41-4-3(B) and (C). At all times material hereto, Defendant City operated and maintained the Farmington Police Department ("FPD") and was the employer and supervisor of the individually named Defendants.

4. Upon information and belief, Defendants James Prince, James Moore, Zack Wood and Jesse Griggs ("individual Defendants") all reside in San Juan County, New Mexico. On June 28, 2018, the date of the incident complained of herein ("incident"), Defendants Prince, Moore, Wood and Griggs were full-time salaried FPD law enforcement officers, and Defendant Griggs was an FPD sergeant, employed by Defendant City, and also were public employees, as those terms are defined in the TCA, NMSA 1978 §§ 41-4-3(D) and (F)(2). At all times relevant to the facts alleged in this Complaint, the individual Defendants were acting under the color of law and in the course and scope of their employment and duties. The individual Defendants are sued in their individual capacities.

5. All notice requirements under the NMTCA were properly complied with because Defendant City had actual notice, pursuant to the TCA, NMSA 1978 §41-4-16 (B), within six months of the incident.

6. This Complaint is timely pursuant to the TCA, NMSA 1978 § 41-4-15, because this action is commenced within two years after the incident; it is timely under federal law because it is commenced within three years after the incident.

7. All of the material acts and omissions complained of herein occurred in San Juan County, New Mexico.

8. This Court has jurisdiction over both the federal and state law claims set forth

herein and venue is proper in this Court.

## FACTUAL BACKGROUND

9. In the early morning hours of June 28, 2018, Daniel Turner died while in the custody of the FPD and the individual Defendants.

10. At the time of his death, Daniel Turner was a 40-year-old, grossly overweight male.

11. Earlier that evening, Daniel's parents, Walter and Tamara Turner, with whom Daniel was living at the time of his death, had noticed that Daniel was acting strangely at their house.

12. The Turners learned later after Daniel's death in the street, that before he left the house, Daniel had made cuts in the paws on his dog and on the bottoms of his own feet.

13. Daniel left the house and walked down North Carlton Street, ending up in the parking lot of a local business.

14. Walter Turner called dispatch via 911 for assistance.

15. Walter informed dispatch that his son Daniel was running through the streets and banging his head on the ground.

16. Upon information and belief, prior to their arrival on scene, the individual Defendants suspected that methamphetamine was involved in Daniel's behavior.

17. Defendant Prince was first on scene.

18. Upon arrival, Defendant Prince observed that Daniel was being assisted by his parents.

19. Defendant Prince then observed that Daniel went to the ground, landing on his head.

20. Defendant Prince approached Daniel and his parents and requested Daniel's name.

21. Defendant Prince radioed to confirm a medic callout.

22. Daniel began to strike his own head against the ground, and his parents attempted to soften these blows by placing a towel under Daniel's head.

23. Defendant Prince attempted to assist Daniel's parents in their aid of Daniel.

24. Shortly after doing so, Defendant Prince forcefully struck Daniel three times.

25. Defendant Prince's three blows were to the left side of Daniel's head.

26. Defendant Prince struck the three blows with a closed fist.

27. Walter told Defendant Prince that he did not have to hit Daniel and asked him why he had done so.

28. Defendant Prince claimed that he struck Daniel because Daniel had reached for Defendant Prince's taser.

29. The Turners witnessed Defendant Prince's interactions with Daniel without interruption and did not see Daniel reach for the officer's taser.

30. Defendant Griggs then arrived on scene and joined in attempting to stop Daniel from striking his head on the ground.

31. Defendant Moore arrived contemporaneously with Defendant Griggs and also assisted.

32. Defendants Griggs, Moore and Prince rolled Daniel onto his stomach.

33. Defendant Moore then placed Daniel in handcuffs.

34. More FPD officers arrived on scene.

35. Daniel struggled while handcuffed and on his stomach.

36. After the individual Defendants restrained him and rolled him onto his stomach, Defendants Griggs, Moore and Prince were hands-on and kept pressure on Daniel's upper body while he lay prone and cuffed in order to restrain him by keeping him proned out on his stomach.

37. Defendant Wood kneeled on one or both of Daniel's legs and prevented them from moving.

38. The individual Defendants believed that Daniel was experiencing "excited delirium."

39. Defendant Griggs notified medics that Daniel appeared to be having a "manic episode."

40. The individual Defendants kept Daniel handcuffed.

41. The individual Defendants continued to apply pressure to Daniel's upper body.

42. The individual Defendants continued to prevent one or both of Daniel's legs from moving.

43. During this time, the individual Defendants prevented Daniel from repositioning himself to more easily breathe.

44. During this time, the individual Defendants failed to assist Daniel into a position in which he could more easily breathe.

45. During this time, the Turners repeatedly but without success implored the individual Defendants to get off of Daniel because he could not breathe.

46. The Turners told the individual Defendants further that Daniel was not struggling to cause them harm but only because he wanted to hurt himself and could not breathe.

47. Daniel's mother, Tamara, further told the individual Defendants that she worked for a hospital and warned them that if they did not get off Daniel, he would stop breathing.

48. Less than three minutes after the individual Defendants had handcuffed and restrained Daniel by rolling him onto his stomach and applying pressure to his upper body and his legs, Defendant Griggs found that Daniel had ceased breathing.

49. Daniel died while restrained and in the custody of the individual Defendants.

50. As a direct and proximate result of the individual Defendants' actions, Daniel was forced to endure pain and suffering as he suffocated from being restrained by them and lost his life due to positional asphyxia.

51. As a direct and proximate result of the individual Defendants' actions, Plaintiffs Walter and Tamara Turner were forced to witness their son's positional asphyxiation and death.

52. The report from the Office of the Medical Investigator ("OMI Report") listed Daniel's death as a homicide.

53. The OMI Report listed as contributory factors to Daniel's death the "physical restraint applied by police officers, and the decedent's prone position (face down; limits one's ability to adequately breathe) while being restrained."

54. The OMI Report also noted that Daniel was obese.

55. The OMI Report also noted that Daniel was on methamphetamine.

56. Key factors in positional asphyxiation are when victims who are overweight, experiencing excited delirium either from a chemical substance or mental illness, are secured face-down in a prone position and pressure is applied to their upper and lower bodies which keeps them from gaining a position in which to breathe better.

57. All of these key factors listed in the preceding paragraph were present in the individual Defendants' complained-of conduct alleged above.

58. Though an adult, Daniel lived at home with his parents, who assisted Daniel financially and through provision of room and board. Daniel helped with chores around the house, assisted with his parents' business needs, and relied on his parents in turn. The relationship between Daniel and his parents was very close and intimate and one of mutual dependence.

59. As a direct and proximate result of the individual Defendants' actions, Plaintiffs Walter and Tamara Turner have lost their relationship with their son Daniel.

## COUNT I
## FOURTH AMENDMENT - EXCESSIVE FORCE

60. Paragraphs 1 through 59 are incorporated herein.

61. Defendants Prince, Moore, Wood and Griggs had a duty to refrain from violating Daniel's federally protected constitutional rights.

62. Specifically, the individual Defendants had a duty to refrain from engaging in an unreasonable seizure of Daniel based on the use of the unnecessary, unreasonable and excessive force that led to Daniel's death at their hands.

63. The individual Defendants are liable for the preventable harm caused by their unreasonable seizure of Daniel based on their use of a face-down positional restraint technique as they placed Daniel in handcuffs and on his stomach and then applied pressure to his upper and lower body parts, which resulted in Daniel's asphyxiated death.

64. In addition to his liability for his direct involvement in the unreasonable seizure of Daniel as described above, Defendant Griggs, who was aware that Daniel was in distress and was experiencing "excited delirium" and a "manic episode," had a duty as the ranking supervisor on scene to intervene, and had sufficient time to do so, in order to prevent the other individual Defendants from violating Daniel's constitutional right to be free from the unreasonable seizure that resulted in Daniel's asphyxiated death based on their use of a face-down positional restraint technique. Based on his failure to intervene, Defendant Griggs is liable for the preventable harm caused by the actions of the subordinate officers under his direct supervision, including but not limited to Defendants Price, Moore and Wood.

65. The conduct of all of the individual Defendants described above, constituted the

unreasonable, unnecessary and unjustified use of excessive force against Daniel Turner. This conduct deprived Daniel of his constitutional rights, under the Fourth Amendment to the United States Constitution, to be free from an unreasonable and illegal seizure of his person, as well as to be free from the application of unreasonable, unnecessary and excessive force in connection with any such seizure.

66. The conduct of Defendants Prince, Moore, Wood and Griggs was intentional, reckless, wanton, and willful. For purposes of Plaintiffs' state law claims, and in the alternative, if the individual Defendants' conduct was not intentional or reckless, it was negligent.

67. The constitutional right to be free from an unreasonable seizure based on the application of unreasonable, unnecessary and excessive force in connection with any such seizure through the application by law enforcement officers of a face-down positional restraint technique where the victim is placed on his stomach while handcuffed behind his back and force is applied to his upper and lower body parts and he is forcibly prevented from gaining a position in which to breathe better, resulting in positional asphyxia and death, which is the right that was violated by the individual Defendants in their use of force upon Daniel Turner, was clearly established prior to June 28, 2018 through *Cruz v. City of Laramie*, 239 F.3d 1183 (10th Cir. 2001), and *Weigel v. Broad*, 544 F.3d 1143 (10th Cir. 2008).

68. As of June 28, 2018, any reasonably competent law enforcement officer within the jurisdiction of the Tenth Circuit Court of Appeals would reasonably have known that based on the circumstances of this incident as they would have been reasonably understood by a reasonably competent law enforcement officer, the conduct of the individual Defendants, as described above, constituted unnecessary, unreasonable and excessive force and an unreasonable seizure in violation of Daniel's constitutionally protected Fourth Amendment rights.

69. As of June 28, 2018, no reasonably competent law enforcement officer within the jurisdiction of the Tenth Circuit Court of Appeals could reasonably have failed to know that based on the circumstances of this incident as they would have been reasonably understood by a reasonably competent law enforcement officer, the conduct of the individual Defendants, as described above, constituted unnecessary, unreasonable and excessive force and an unreasonable seizure in violation of Daniel's constitutionally protected Fourth Amendment rights.

70. As of June 28, 2018, the duty of Defendant Griggs to intervene, when he had sufficient time to do so, to prevent the other individual Defendants from violating Daniel's clearly established right to be free from the unreasonable, unnecessary and excessive use of force described above was itself clearly established.

71. The above-described conduct of the individual Defendants was a direct and proximate cause of the deprivation of Daniel's clearly established Fourth Amendment rights, as well as the resultant injuries and damages described above.

## COUNT II
## WRONGFUL DEATH UNDER THE NEW MEXICO TORT CLAIMS ACT

72. Paragraphs 1 through 71 are incorporated herein.

73. Defendants Prince, Moore, Wood and Griggs, as law enforcement officers, had the duty in any activity actually undertaken by them in that capacity to exercise, for the safety of others, a level of care that would be ordinarily exercised by a reasonable, prudent and qualified law enforcement officer in light of the nature of the circumstances at the time.

74. The individual Defendants breached this duty by using unreasonable, unnecessary and excessive force against Daniel Turner.

75. The tortious conduct of the individual Defendants described above, and including their unlawful use of unreasonable, unnecessary and excessive force upon him, directly and

proximately caused personal injury, bodily injury and wrongful death to Daniel, in violation of Section 12 of the TCA, NMSA 1978 § 41-4-12.

76. Defendant City of Farmington is directly liable under the TCA for the tortious conduct of the individual Defendants through the doctrine of *respondeat superior*.

## COUNT III
## LOSS OF CONSORTIUM UNDER THE NEW MEXICO TORT CLAIMS ACT

77. Paragraphs 1 through 76 are incorporated herein.

78. At the time of his death and for a substantial period of time prior to his death, Daniel lived at home with his parents, Plaintiffs Walter and Tamara Turner.

79. Walter and Tamara loved their son very much and miss him and the close and special relationship they enjoyed with him as between parents and a child, which they lost as a direct and proximate result of the individual Defendants' tortious conduct.

80. Walter and Tamara's loss of consortium includes, but is not limited to, the loss and deprivation of a relationship with their child, loss of companionship, guidance, loss of the familial relationship, mental anguish, family stability, and other associated trauma related to the loss of a child.

81. The death of Daniel Turner has caused Walter and Tamara to suffer a loss of consortium, as that term is legally defined, for which the Defendants are liable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court grant the following relief:

1. Judgment for the Plaintiffs and against the Defendants;

2. A jury trial on all claims so triable;

3. An award of compensatory damages against the Defendants Price, Moore, Wood and Griggs, jointly and severally, on the Estate's federal law claim, in an amount

      that the jury determines is sufficient to compensate the Estate of Daniel Turner for the harm suffered by Daniel Turner;

4. An award of compensatory damages against all Defendants, jointly and severally, on the Estate's state law claims in an amount that the jury determines is sufficient to compensate the Estate of Daniel Turner for the Defendants' tortious conduct that caused Daniel's wrongful death;

5. Awards of compensatory damages against all Defendants, jointly and severally, and in favor of each of the Plaintiffs Walter and Tamara Turner, in amounts that the jury determines are sufficient to compensate each of them for their loss of consortium;

6. An award of statutory costs pursuant to Fed. R. Civ. P. 54 and 28 U.S.C. § 1920 and attorneys' fees and litigation expenses reasonably and necessarily incurred in bringing this action pursuant to 42 U.S.C. § 1988;

7. Pre- and post-judgment interest; and,

8. Any other relief the Court deems just and proper.

                              DAVIS LAW NEW MEXICO

                              */s/ Nicholas T. Davis*
                              Philip B. Davis
                              Nicholas T. Davis
                              1000 Lomas Blvd. NW
                              Albuquerque, NM 87102
                              (505) 242-1904
                              (505) 242-1864 (fax)
                              phil@davislawnm.com
                              nick@davislawnm.com

                              *Attorneys for Plaintiffs Dennis Murphy,*
                              *Personal Representative of the Estate of*
                              *Daniel Turner, and Walter and Tamara Turner*