IN THE UNITED STATES DISTTICT COURT
FOR THE DISTRICT OF NEW MEXICO

DENNIS MURPHY, as Personal Representative
of the ESTATE OF DANIEL TURNER, deceased,
and WALTER and TAMARA TURNER,

      Plaintiffs,

      Vs.                                    Civ. No. 19-639  RB/JFR

THE CITY OF FARMINGTON, and JAMES
PRINCE, JAMES MOORE, ZACK WOOD and
JESSE GRIGGS, in their individual capacities,

      Defendants.

## ORDER REGARDING PLAINTIFFS' OPPOSED MOTION
## TO EXTEND TIME *NUNC PRO TUNC*
## TO DISCLOSE A REBUTTAL EXPERT WITNESS

**THIS MATTER** is before the Court on Plaintiffs' Opposed Motion to Extend Time *Nunc Pro Tunc* to Disclose a Rebuttal Expert Witness ("Motion"), filed July 30, 2020.  Doc. 33. Defendants filed a Response on August 13, 2020.  Doc. 34.  Plaintiffs filed a Reply on August 13, 2020.  Doc. 34.  Having reviewed the parties' submissions and the relevant law, the Court finds the Motion is well taken in part and is **GRANTED IN PART.**

Daniel Turner died while restrained in the custody of the individual Defendants.  Doc. 1 at 6.  His estate and parents bring this suit for damages under the Fourth Amendment and state tort law arising from Mr. Turner's death.  At issue, in part, is whether the individual Defendants unreasonably seized Mr. Turner and used unnecessary and excessive force when they placed Mr. Turner on his stomach while his hands were handcuffed behind his back, applied pressure to his upper and lower body parts, and prevented him from gaining a position in which to breathe. *Id.* at 7-9.

On September 30, 2019, the parties submitted a Joint Status Report and Provisional Discovery Plan ("JSR"). Doc. 10. In the JSR, the parties proposed that reports from retained experts under Rule 26(a)(2) would be due from Plaintiffs by December 10, 2019, and from Defendants by January 17, 2020. *Id.* at 13. On October 10, 2019, the Court entered case management deadlines and adopted the expert disclosure dates the parties proposed. Doc. 14. On March 13, 2020, the Court entered an order extending certain of the case management deadlines. Doc. 26. On July 24, 2020, the Court entered an order extending the discovery deadline to September 15, 2020, for the purpose of taking depositions and extending the pretrial deadline to October 15, 2020. Doc. 32. Neither of the Court's orders extended the expert disclosure deadlines.

In keeping with the expert disclosure deadlines, Plaintiffs disclosed, on December 10, 2019, police procedures consultant Roger A. Clark.[1] Doc. 33-2. Mr. Clark provided expert opinion testimony on restraint techniques expected of properly trained law enforcement officers, the general risks associated with excessive restraint, and the heightened risks of excessive restraint when combined with certain conditions; *i.e.,* obesity, heart problems, neck injuries, mental impairments, alcohol or drug usage, and the length and environment of any physical struggle. *Id.* Based on Mr. Clark's review of the materials provided, he opined, *inter alia*, that the individual Defendants' use of force was excessive, unreasonable, unnecessary, unjustified, and violated Farmington Police Department policy, and that properly trained officers would have

---

[1] Plaintiffs also disclosed OMI Investigator Ian Paul, M.D. Doc. 34 at 2. Plaintiffs explain that Dr. Paul was identified pursuant to Fed. R. Civ. P. 26(a)(2)(C) as an unretained expert witness who might testify solely as to the matters related in the OMI Report. Doc. 35 at 6, n. 4. They go on to explain that Dr. Paul cannot opine other than as to cause of death in the abstract, unrelated to the actions of the defendant officers whose actions are alleged to have killed Daniel Tuner, and surely cannot and will not offer testimony in rebuttal to Dr. Vilke's. *Id.*

known that the application of pressure and body weight on Mr. Turner while he was prone on the ground and handcuffed could lead to positional asphyxia. *Id.*

On January 17, 2020, Defendants disclosed emergency department physician Gary M. Vilke, M.D., FACEP, FAAEM, "to testify concerning positional or restraint asphyxia related to the death of Mr. Turner and his cause of death, addressing the expected opinions of both Mr. Clark and Dr. Paul." Doc. 34 at 2. In his report, Dr. Vilke explained he provided expert opinion testimony on "whether the actions of the Farmington police officers caused or contributed to the cardiac arrest and death of Mr. Daniel Turner when the officers encountered him on June 27, 2018." Doc. 33-3. Based on Dr. Vilke's review of the materials provided, he opined, *inter alia*, "to a reasonable degree of medical certainty that Mr. Turner's cardiac arrest was not caused by the actions of the officers but rather was caused by a sudden cardiac arrest due to the toxic effects of methamphetamine, as opined by the medical examiner." *Id.*

In their Motion, Plaintiffs seek an extension of time *nunc pro tunc* to disclose expert witness John Stein, M.D., to rebut defense expert Dr. Vilke's medical theory/causation testimony.[2] Plaintiffs explain that they only recently learned that Dr. Vilke was disclosed as a rebuttal witness, as opposed to an original expert witness, and argue that Dr. Vilke's report exceeds the subject matter of Dr. Clark's expert report by introducing "several *medical* theories, including methamphetamine intoxication, untreated or undertreated schizophrenia, positional asphyxiation as medically described, and the effect of lactic acid build-up in the human body." Doc. 33 at 4. As such, Plaintiffs argue that Dr. Vilke should be classified as an initial expert witness thereby allowing Plaintiffs to name a rebuttal witness. *Id.* at 8-9. Plaintiffs acknowledge

---

[2] Plaintiffs attached a Declaration of John Stein, M.D., in which Dr. Stein provides his medical opinions, and basis and reasons for them, regarding the cause of Mr. Turner's death. Doc. 33-4.

that their counsel missed the deadline for disclosure of a rebuttal medical witness pursuant to Fed. R. Civ. P. 26(a)(2)(D)(ii) but argue that their untimely disclosure is substantially justified and harmless pursuant to Fed. R. Civ. P. 37(c)(1). *Id.* at 5-7. Plaintiffs ask this Court to grant their requested extension of time *nunc pro tunc* to disclose Dr. Stein as either their expert rebuttal medical witness or as an initial witness to address the medical issues identified in Dr. Vilke's expert report or, in the alternative, to strike Sections Three and Four of Dr. Vilke's report. *Id.* at 5.

Defendants contend that Plaintiffs have misconstrued certain of the parties' recent communications to assert that Defendants disclosed Dr. Vilke solely as a rebuttal expert witness. Doc. 34 at 3. To the contrary, Defendants assert that Dr. Vilke is both a response and principal witness because he responded to Mr. Clark's testimony and developed Defendants' theory of what caused Mr. Turner's death. Doc. 34 at 5. Defendants further assert that they timely disclosed and provided Dr. Vilke's expert report to Plaintiffs, but that Plaintiffs, despite having had Dr. Vilke's report since January 17, 2020, missed the deadline for identifying a rebuttal expert and have since failed to depose him. Doc. 34 at 5-6. Defendants argue that Plaintiffs had an opportunity to disclose a rebuttal expert or seek an extension of time for doing so, but chose not to, and that Plaintiffs have failed to present any justification for their untimely disclosure. *Id.* at 6-8. As such, Defendants ask that the Court adhere to the established deadlines and deny Plaintiffs' untimely disclosure. *Id.* at 6.

## ANALYSIS

### A. Motion to Extend Time *Nunc Pro Tunc*

Rule 6 of the Federal Rules of Civil Procedure provides that "the court may, for good cause, extend the time ... on motion made after the time has expired if the party failed to act

4

because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). Notably, the Supreme Court has stated that "Congress plainly contemplated that courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake or carelessness, as well as by intervening circumstances beyond the party's control." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993) (interpreting "excusable neglect" in the context of the federal rules of bankruptcy procedure); *see also Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1494 (10th Cir. 1995) (applying the *Pioneer* definition in the context of Rule 6(b)).

The Tenth Circuit has explained that good cause requires a showing of "good faith on the part of the party seeking the enlargement and some reasonable basis for noncompliance within the time specified." *In re Kirkland*, 86 F.3d 172, 175 (10th Cir. 1996) (quoting *Putnam v. Morris*, 833 F.2d 903, 905 (10th Cir. 1987)). Good cause "is not a particularly demanding requirement." *Stark-Romero v. Nat'l R.R. Passenger Co.*, 275 F.R.D. 544, 547 (D.N.M. 2011). Similarly, " 'excusable neglect' under Rule 6(b) is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer Inv. Servs.*, 507 U.S. at 395. "Excusable neglect" may include attorney inadvertence or negligence, provided certain mitigating circumstances are present. *Id.* at 395–97. The Tenth Circuit has recognized that "the determination whether a party's neglect is excusable 'is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.' " *United States v. Torres*, 372 F.3d 1159, 1162 (10th Cir. 2004) (*quoting Pioneer Inv. Servs.*, 507 U.S. at 395).

Plaintiffs' Motion, albeit titled a motion for extension of time *nunc pro tunc*, failed to address the legal standard for an extension of time, *i.e.,* excusable neglect and good cause. *See, e.g., Martinez v. City of Rio Rancho*, 2016 WL 10257483, *3 (D.N.M. May 10, 2016) (finding

5

that plaintiff had shown excusable neglect in failing to file a timely response and that good cause existed to extend the deadline for filing a response to motion for summary judgment *nunc pro tunc*). Moreover, "[a] *nunc pro tunc* order is used to correct an inaccuracy in an earlier order." *Heinemann v. Wilson*, 773 F. App'x 478, 479 (10th Cir. 2019). Although Plaintiffs admit that they failed to timely disclose Dr. Stein as a rebuttal expert witness, Plaintiffs' Motion does not address an "inaccuracy" in the Court's scheduling order. For these reasons, to the extent Plaintiffs' Motion seeks to retroactively extend the expert disclosure deadlines, it is **DENIED.**

### B. Untimely Disclosure of Rebuttal Expert

Rule 37 provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "[T]he determination of whether a Rule 26(a) [or (e)] violation is justified or harmless is entrusted to the broad discretion of the district court." HCG *Platinum, LLC v. Preferred Prod. Placement Corp.*, 873 F.3d 1191, 1200 (10th Cir. 2017) (citation omitted). The Rule 37(c)(1) inquiry "depends upon several factors that a district court should consider in exercising its discretion." *Id.* (citation omitted) (emphasis removed). These factors include: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Woodworker's Supply, Inc. v. Principal Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).

Plaintiffs concede that they failed to timely disclose a rebuttal expert witness. They argue, however, that their untimely disclosure is substantially justified and harmless because (1) the prejudice or surprise to Defendants by permitting a rebuttal witness is *de minimus*;

(2) that trial in this matter is seven months away leaving ample time for Defendants to depose Dr. Stein; (3) that Plaintiffs' procurement of a rebuttal witness will not disrupt the trial that is seven months away; and (4) that there is no compelling narrative in this case to show Plaintiffs acted in bad faith or with willful intent by missing the deadline. Doc. 33 at 6-7.

As to the first factor, Plaintiffs argue there is no prejudice to Defendants because even if Dr. Stein had been disclosed earlier, the full extent of his rebuttal testimony would not have been available until more recently because expert depositions bearing on his testimony were delayed until June 2020 due to the COVID-19 pandemic. *Id.* at 6. Plaintiffs also argue there is no prejudice to Defendants because Defendants will have time to depose Dr. Stein prior to the expiration of the discovery deadline to conduct depositions[3] and that based on his testimony Defendants will be able to supplement their own expert's report up until 30 days before trial. *Id.* at 6-7. In response, Defendants contend they are prejudiced and surprised by Plaintiffs' untimely request to submit another expert report. Doc. 34 at 6. They further contend that the unavailability and/or delay of expert deposition testimony is an insufficient reason for Plaintiffs' failure to timely disclose a rebuttal expert witness, and that Dr. Stein's ability to prepare his declaration in the absence of expert deposition testimony is evidence of that. *Id.* at 6-7. Defendants further contend that Plaintiffs had a plethora of options available to them to alert Defendants before now that they intended to disclose a rebuttal expert witness, but that they failed to use any of them.[4]

---

[3] On July 24, 2020, the Court extended the time in which the parties could conduct depositions until September 15, 2020. Doc. 32.

[4] Defendants argue that Plaintiffs "could have taken the parties' depositions (1) before Plaintiffs' deadline to identify their experts or (2) between the time Plaintiffs identified their expert and Defendants identified Dr. Vilke or (3) after Dr. Vilke was identified and before the deadline for identifying a rebuttal expert expired or (4) taken the opportunity to request an extension of their original expert deadline or (5) request an extension to name a rebuttal expert within thirty days of Defendants' expert disclosure in January or (6) discussed the issue with Defendants' counsel before July 2020." Doc. 34 at 7.

7

As to the second and third factors, Plaintiffs argue that any prejudice can be cured and that a "trial by ambush" is not supported here because Defendants have ample time to prepare for trial, which is not scheduled to begin until mid-March 2021, and that there will be no disruption to the trial date. Doc. 33 at 7. Plaintiffs further argue that Defendants can depose Dr. Stein before discovery terminates, and that they will incur the same cost of reviewing Dr. Stein's report and deposing him that they would have incurred had he been disclosed earlier. *Id.* Plaintiffs similarly argue that any cost Defendants incur for having their own expert address Dr. Stein's testimony would have been incurred had Dr. Stein been disclosed earlier. *Id.* Defendants contend that deposing an expert is expensive and that Plaintiffs have failed to disclose Dr. Stein's fees for attending and preparing for any deposition as required pursuant to Fed. R. Civ. P. 26(a)(2)(D)(ii). Doc. 34 at 7-8. Defendants contend the additional cost of deposing Dr. Stein is prejudicial to them. *Id.*

As to the fourth factor, Plaintiff argues that "there is no compelling narrative in this case to show Plaintiffs acted in bad faith or with willful intent when the deadline was missed." Doc. 33 at 7. They further argue that their oversight was an "honest mistake," and that once they recognized their mistake, they contacted Defendants with a candid disclosure and sought to resolve the error. *Id.* Defendants contend that Plaintiffs' late disclosure is a "game changer" and can be viewed as a tactical litigation decision made at the last minute and not as an honest mistake. Doc. 34 at 8. Defendants further contend that other than claiming an oversight, Plaintiffs have submitted no justification for their failure to identify another expert. *Id.*

Considering the parties' arguments and applying the relevant factors here, the Court finds that the *Woodworker's Supply* factors weigh in favor of allowing Plaintiffs' untimely disclosure

of Dr. Stein as a rebuttal expert witness pursuant to Fed. R. Civ. P. 26(a)(2)(D)(ii).  First, Defendants state in their Response that Dr. Vilke testified as both a response and a principal witness, *i.e.,* responding to Dr. Clark's expert testimony and developing Defendants' theory as to what caused Mr. Turner's death.  Doc. 34 at 5-6.  That Plaintiffs would want to offer rebuttal expert testimony on Defendants' theory of what caused Mr. Turner's death, therefore, could not be a complete surprise to Defendants.  Second, any prejudice caused by Plaintiffs' untimely disclosure can be cured.  For instance, Plaintiffs have already provided the substance of Dr. Stein's rebuttal expert testimony in his Declaration attached to Plaintiffs' Motion.  Moreover, the discovery deadline for conducting depositions has not yet terminated.[5]  Further, the Court can remedy any prejudice to Defendants for the cost associated with deposing Dr. Stein by requiring Plaintiffs to bear the cost of his deposition.  As to the third factor, the Court agrees that Plaintiffs' disclosure of Dr. Stein as a rebuttal expert witness will not disrupt the trial in this matter since the trial is still seven months away.  Finally, Defendants' argument that Plaintiffs' untimely disclosure can be viewed as a tactical litigation decision and not an honest mistake, without more, is speculative.  Moreover, the parties do not dispute that Plaintiffs reached out to Defendants regarding their failure to timely disclose a rebuttal expert witness and attempted to resolve the issue in good faith, as they were required to do.  In sum, Defendants have failed to make any showing that Plaintiffs acted in bad faith or willfully.

For the foregoing reasons, the Court finds that the *Woodworkers' Supply* factors counsel in favor of allowing Plaintiffs' untimely disclosure of rebuttal expert Dr. Stein.  The Court, however, will limit Dr. Stein's testimony solely to contradict or rebut evidence on the same subject matter identified by Dr. Vilke regarding Defendants' theory of what caused Mr. Turner's

---

[5] *See* fn. 3, *supra.*

9

death. *See* Fed. R. Civ. P. 26(a)(2)(D)(ii). Plaintiffs are ordered to submit a written report that comports with the requirements of Rule 26 by no later **Friday, September 4, 2020**. If Defendants choose to take Dr. Stein's deposition, the parties will meet and confer to determine a mutually agreeable time to depose Dr. Stein. Dr. Stein's deposition must occur prior to the close of discovery for conducting depositions. Dr. Stein's deposition will be limited to four hours, and to remedy any prejudice to Defendants, the Court will require Plaintiffs to bear the cost of the deposition.[6]

      **IT IS THEREFORE ORDERED** that Plaintiffs' Opposed Motion to Extend Time *Nunc Pro Tunc* to Disclose a Rebuttal Expert Witness (Doc. 33) is **GRANTED IN PART.**

_____
**JOHN F. ROBBENHAAR**
**United States Magistrate Judge**

---

[6] Plaintiffs will pay Dr. Stein's fee for attending a deposition and associated court reporter fees.