IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DENNIS MURPHY, as Personal Representative
of the ESTATE OF DANIEL TURNER, deceased,
and WALTER and TAMARA TURNER,

            Plaintiffs,

v.                                                                                                                           No. 1:19-cv-00639-RB-JFR

THE CITY OF FARMINGTON, et al.,

            Defendants.

## MOTION TO EXCLUDE PLAINTIFFS' EXPERT WITNESS DR. STEIN

Pursuant to Rule 702 of the Federal Rules of Evidence, Defendants City of Farmington, James Prince, Mark Moore (incorrectly identified in Plaintiffs' Complaint as James Moore), Zach Wood and Jesse Griggs hereby move to exclude Plaintiffs' expert witness, Dr. John Stein. This Motion should be granted because Dr. Stein does not have the relevant or applicable expertise to render the opinions he was retained to render by Plaintiffs. In accordance with D.N.M. LR-Civ. 7.1(a), concurrence of opposing counsel was sought and denied.

### I.     STATEMENT OF MATERIAL FACTS

These are the relevant facts determined from the record in this case:

1.     Dr. John Stein is a doctor of emergency medicine who was disclosed by Plaintiffs as an expert to rebut the expert testimony and report of Dr. Gary Vilke, Defendants' expert.

2.     Dr. Stein describes his expertise as "Generally, they involve technology implementation in the emergency care environment." Exhibit A, relevant portions of deposition of Dr. John Stein, 4:4-5.

3. Dr. Stein has no publications or research on cardiac arrest or acidosis. He has not done any evaluation of weight force impact on ventilations. *Id*., 4:12-13; 4:25 to 5:7.

4. Dr. Stein has not trained law enforcement officers in positional asphyxiation or in the recovery position. *Id*., 8:3-8.

5. Dr. Stein has not worked with training law enforcement officers on first responder care. *Id*., 6:25 to 7:2.

6. Dr. Stein's courtroom testimony has focused on the standard of care in the hospital setting. *Id*., 10:10-12.

7. Dr. Stein has not been qualified by a court to testify about law enforcement officers' conduct or standard of care. *Id*. 10:21-24, 11:7-10.

8. Dr. Stein admits that he is not an expert on police activities or procedures. *Id*., 45:23 to 46:2.

9. Dr. Stein stated in his report that "Countless patients present to Emergency Departments exhibiting similar characteristics, so this is a population that every ER doctor is familiar with."

10. Dr. Stein's area of expertise, as an expert witness emergency room doctor, is in the standard of care for medical professionals in a hospital setting in medical malpractice actions. *Id*., 9:20- 10:24, 16:1-21.

11. Decedent Daniel Turner was not admitted to an emergency room. According to the complaint, Daniel died in the parking lot of a coffee shop after a short interaction with police officers, during which he was put in a prone position and handcuffed.

12. Less than three minutes after Daniel was handcuffed, he stopped breathing. Complaint, ¶ 48.

13. The Office of the Medical Examiner concluded that Daniel's cause of death was a sudden cardiac arrest due to an enlarged heart along with the toxic effects of methamphetamines and physiologic stress.

## II. POINTS AND AUTHORITIES

### A. The Daubert v. Merrell Dow Pharm., Inc. Standard.

In its gatekeeper role, a court must assess the reasoning and methodology underlying an expert's opinion, and determine whether it is both scientifically valid and relevant to the facts of the case, i.e., whether it is helpful to the trier of fact. *See* Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 594-95 (1993); Dodge v. Cotter Corp., 328 F.3d 1212, 1221 (10th Cir. 2003)). The Supreme Court articulated a non-exclusive list of factors that weigh into a district court's first-step reliability determination, including: (1) whether the method has been tested; (2) whether the method has been published and subject to peer review; (3) the error rate; (4) the existence of standards and whether the witness applied them in the present case; and (5) whether the witness' method is generally accepted as reliable in the relevant medical and scientific community. Daubert, 594-95. Rule 702 requires the district court to "ensure that any and all scientific testimony or evidence is not only relevant, but reliable." Bitler v. A.O. Smith Corp., 391 F.3d 1114, 1120 (10th Cir. 2004) (*quoting* Daubert, 589). This obligation involves a two-part inquiry. *Id.* A district court must first determine if the expert's proffered testimony has a reliable basis in the knowledge and experience of his discipline. *Id*. In making this determination, the district court must decide "whether the reasoning or methodology underlying the testimony is scientifically valid." *Id.*

(*quoting* Daubert, 592-93). Second, the district court must further inquire into whether proposed testimony is sufficiently "relevant to the task at hand." Daubert at 597.

"The second inquiry is related to the first. Under the relevance prong of the Daubert analysis, the court must ensure that the proposed expert testimony logically advances a material aspect of the case. The evidence must have a valid scientific connection to the disputed facts in the case. "Norris v. Baxter Healthcare Corp., 397 F.3d at 884 n.2. If the expert's proffered testimony fails on the first prong, the court does not reach the second prong. *Id.*, 884. In Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999), the Supreme Court expanded the Daubert rules to non-scientific expert testimony. ("We conclude that Daubert's general holding -- setting forth the trial judge's general 'gatekeeping' obligation -- applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge."). In Kumho Tire Co., the Supreme Court recognized that the Daubert factors will not apply to all cases:

> Our emphasis on the word "may" thus reflects Daubert's description of the Rule 702 inquiry as a flexible one. Daubert makes clear that the factors it mentions do not constitute a definitive checklist or test. And Daubert adds that the gatekeeping inquiry must be tied to the facts of a particular case.

Kumho Tire Co., 150 (*internal quotation marks omitted*). With non-scientific experts, "the relevant reliability concerns may focus upon personal knowledge or experience." *Id*.

The proponent of the expert's opinion testimony bears the burden of establishing that the expert is qualified, that the methodology he or she uses to support his or her opinions is reliable, and that his or her opinion fits the facts of the case and thus will be helpful to the jury. *See* 397 F.3d , 881. The Tenth Circuit noted in Hollander v. Sandoz Pharmaceuticals Corp., 289 F.3d 1193 (10th Cir. 2002):

4

> Because the district court has discretion to consider a variety of factors in assessing reliability under Daubert, and because, in light of that discretion, there is not an extensive body of appellate case law defining the criteria for assessing scientific reliability, we are limited to determining whether the district court's application of the Daubert manifests a clear error of judgment or exceeds the bounds of permissible choice in the circumstances . . . . Thus, when coupled with this deferential standard of review, Daubert's effort to safeguard the reliability of science in the courtroom may produce a counter-intuitive effect: different courts relying on the essentially the same science may reach different results.

Hollander, 1206. Once reliability is established, however, it is still within the court's discretion to determine whether expert testimony will be helpful to the trier of fact. In making that determination, the court should consider, among other factors, the testimony's relevance, the jurors' common knowledge and experience, and whether the expert's testimony may usurp the jury's primary role as the evaluator of evidence. United States v. Rodriguez-Felix, 450 F.3d 1117, 1123 (10th Cir. 2006)).

Courts have excluded experts' opinions when the experts depart from their own established standards. *See* Truck Ins. Exch. v. MagneTek, Inc., 360 F.3d 1206, 1213 (10th Cir. 2004); Magdaleno v. Burlington N.R.R. Co., 5 F. Supp. 2d 899, 905 (D. Colo. 1998)(Babcock, J.) ("In sum, [the expert]'s methodology is not consistent with the methodologies described by the authors and experts whom [the expert] identifies as key authorities in his field.").

**B.    Qualifications to testify as an expert.**

Federal Rule of Evidence 702 governs the admissibility of expert witness testimony and provides that:

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

5

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Plaintiffs, who are seeking to qualify Dr. Stein as their expert, bear the burden of satisfying Rule 702 and establishing the admissibility of the testimony. United States v. Baines, 573 F.3d 979, 985 (10th Cir. 2009).

In Kumho Tire Co., the Supreme Court imposed upon the Court a "gatekeeping" function with regard to the admissibility of expert opinions. The objective of the gatekeeping obligation is to "ensure the reliability and relevancy of expert testimony ... to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Id. at 152.

The gatekeeping function involves a two-step analysis. Milne v. USA Cycling Inc., 575 F.3d 1120, 1134 (10th Cir. 2009). First, the Court must determine whether the witness may be qualified as an expert. To qualify as an expert, the witness must possess such "knowledge, skill, experience, training, or education" in the particular field so that it appears that his or her opinion rests on a substantial foundation and tends to aid the trier of fact in its search for the truth. LifeWise Master Funding v. Telebank, 374 F.3d 917, 928 (10th Cir. 2004). "Rule 702 thus dictates a common-sense inquiry of whether a juror would be able to understand the evidence without specialized knowledge concerning the subject." United States v. McDonald, 933 F.2d 1519, 1522 (10th Cir. 1991). The Court must determine whether the witness' opinions are reliable under the principles set forth in Daubert and Kumho Tire Co.

In addition, Rule 702 requires that expert testimony be relevant. One aspect of relevance is that the opinions have a sufficient factual basis and a reliable application of the methodology to the facts. Daubert, 509 U.S. at 591. A sufficient factual basis does not necessarily require the facts or data upon which an expert bases his or her opinion to be independently admissible, so long as they are of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject. Fed.R.Evid. 703.

While specialized knowledge can be acquired through experience and training, the trial court must perform a gatekeeping role with respect to all expert testimony, not just such testimony by scientific experts, the reliability criteria enunciated in Daubert are not to be applied woodenly in all circumstances. In this case, Dr. Stein does not have the training or experience in the issues the jury must decide. His area of expertise, as an emergency room doctor, is in the standard of care for medical professionals in a hospital setting. Ex. A, 9:20 to 10:24. He has never been qualified to testify about the standard of care for Emergency Medical Technicians who work outside a hospital setting. *Id.* 10:10-15. Dr. Stein admits that the medical professional's standard of care, about which he is an expert, does not apply to the defendant law enforcement officers and he has never developed opinions about a law enforcement officer's standard of care. *Id.* 10:17-24. Dr. Stein has no expertise in evaluating the situation the defendant law enforcement officers encountered with Daniel in the middle of the night in a parking lot in Farmington, New Mexico and cannot assist the jury in performing its charge. Dr. Stein admitted he does not have training, experience or expertise in the relevant areas of inquiry.

> Experiential expert testimony, on the other hand, does not "rely on anything like a scientific method." But this does not lead to a conclusion that "experience alone -- or experience in conjunction with other knowledge, skill, training or education -- may not provide a sufficient foundation for expert testimony. To the contrary, the

7

text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience." While a district court's task in examining the reliability of experiential expert testimony is therefore somewhat more opaque, the district court must nonetheless require an experiential witness to "explain how [his] experience leads to the conclusion reached, why [his] experience is a sufficient basis for the opinion, and how [his] experience is reliably applied to the facts.

United States v. Goxcon-Chagel, 886 F. Supp. 2nd 1222 (N.M. 2012), *quoting* United States v. Wilson, 484 F.3d at 274 (*alterations in original)(citations omitted*).

In this case, Dr. Stein lacks the requisite experience to present opinions that are being asked of him in this case. He has never studied, written or trained in cardiac arrest or acidosis which was the cause of Daniel's death. He has not done any evaluation of weight force impact on ventilations. Dr. Stein has not trained law enforcement officers in positional asphyxiation or in the recovery position. According to the Medical Examiner's statements, Daniel suffered from a sudden cardiac arrest which was exacerbated by methamphetamines and physiologic stress. The Medical Examiner also pointed out that Daniel was obese, had untreated schizophrenia and methamphetamine poisoning. Dr. Stein, who has no experience in what caused Daniel's death, is not competent to offer opinions on the cause of that death.

### III. CONCLUSION

For the foregoing reasons, Defendants request the Court **e**xclude Plaintiffs' expert witness, Dr. John Stein, because Dr. Stein does not have the relevant or applicable expertise to render the opinions he was retained to render by Plaintiffs.

Respectfully submitted,

WIGGINS, WILLIAMS & WIGGINS
A Professional Corporation

*Electronically Filed*

By  */s/ Patricia G. Williams*
         Patricia G. Williams
Attorneys for Defendants
1803 Rio Grande Blvd., N.W. (87104)
P.O. Box 1308
Albuquerque, New Mexico 87103-1308
(505) 764-8400
pwilliams@wwwlaw.us

We hereby certify that on this 15th day of
October, 2020, the foregoing was filed electronically
through the CM/ECF system, which caused all
parties or counsel of record to be served
by electronic means, as more fully reflected on the
Notice of Electronic Filing.

WIGGINS, WILLIAMS & WIGGINS, P.C.

By  */s/ Patricia G. Williams*
         Patricia G. Williams